**IN THE UNITED STATES DISTRICT COURT FOR THE**

**EASTERN DISTRICT OF CALIFORNIA**

EVANSTON INSURANCE COMPANY, an Illinois corporation,

Plaintiff,

v.

NORTH AMERICAN CAPACITY INSURANCE COMPANY, a New Hampshire corporation,

Defendant.

_________________________________/

1:13-cv-01365-AWI-SAB

**ORDER REGARDING DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

## I. Introduction

This action arises from a dispute regarding the scope of Defendant North American Capacity Insurance Company's ("NAC") responsibility to provide legal defense for Berry & Berry, Inc. ("Berry & Berry"), construction and development company mutually insured by Plaintiff Evanston Insurance Company ("Evanston") and NAC. Evanston contends that NAC had a joint responsibility with Evanston to defend Berry & Berry against claims arising from the matters within the scope of the liability policies. NAC claims that no duty to defend was triggered because Berry & Berry failed to pay the required $10,000 per-claim Self-Insured Retention Endorsements ("SIR Endorsement"). NAC filed a motion for partial summary judgment pursuant to Federal Rule of Civil Procedure 56. For the following reasons, NAC's motion will be granted.

**II. Background**

Evanston issued three consecutive commercial general liability policies to Berry & Berry. The policies collectively covered the period from July 1, 2002 until July 1, 2005. Doc. 2 ("Compl.") at ¶ 7. The policies provided that Evanston would "pay those sums that [Berry & Berry] becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies." Compl. at ¶ 7. Evanston also had the "right and duty to defend any "suit" seeking those damages." Compl. at ¶ 7.

NAC issued two consecutive commercial general liability policies to Berry & Berry. Those policies collectively covered the period from July 1, 2000 to July 1, 2002. Section I of both policies provide that NAC "will pay those sums that [Berry & Berry] becomes legally obligated to pay as damages for bodily injury or property damage to which th[e] insurance applies." Declaration of Counsel in Support of Motion for Summary Judgment, Exhibit 1 ("Doc. 16") at p. 24; Exhibit 2 ("Doc. 16-1") at p. 30. According to the first policy NAC also has "the right and duty to defend any suit seeking those damages." Doc. 16 at p. 24. The first policy goes on to specify that NAC's "duty to defend is excess over and shall not contribute where the insured has any other insurance under which, but for the existence of this Policy, any other insurer is obligated to provide a defense." Doc. 16 at p. 24. The second policy provides that NAC "will have the right and duty to defend any suit seeking [bodily injury or property damages which the insurance covers], unless an insured has another policy of insurance which obligates another insurer to provide a defense, in which case, [NAC's] duty to defend is excess." Doc. 16-1 at p. 30.

Both NAC policies contain SIR endorsements which provide in relevant part:

> <u>The self-insured retention (retained limit) applies to each and every claim made against you, regardless of how many claims arise from a single occurrence or are combined in a single suit</u>, and the company has not duty to defend you unless and until the amount of the retained limit has been exhausted by payment of settlements, judgments, or claims expense. (<u>claims expenses do reduce the retained limit</u>)

***

> In the event of a conflict between any of the terms, conditions or provisions of the policy and this endorsement, this endorsement shall control the application of insurance to…
>
> ***
>
> (B) The "retained limit" for <u>each and every claim</u> arising as the result of an "occurrence"… shall be: [¶] $10,000.00 [¶] <u>regardless of the number of claims from a single occurrence, suits brought or the number of claims incorporated into one such suit.</u>

Doc. 16 at p. 13; Doc. 16-1 at p. 24 (emphasis original).

Both NAC policies define "claim" and "claims" collectively as follows:

> Claim or Claims means a request or demand received by any insured or the Company for money or services, including the service of suit or institution of arbitration proceedings against any insured.

Doc. 16 at p. 35; Doc. 16-1 at p. 41. NAC also defines the term "occurrence" as follows:

> Occurrence means an accident, including continuous or repeated exposure to substantially the same general harm.

Doc. 16 at p. 36; Doc. 16-1 at p. 42.

Five separate actions have been filed against Berry & Berry in the Madera County Superior Court alleging property damage resulting from faulty construction: *Adame, et al. v. Berry & Berry Inc., et al*, arising from damage to 13 homes (Joint Statement of Material Facts, Doc. 17-1 ("JSF") at No. 5) or 16 homes (Evanston's Statement of Disputed Facts, Doc. 20 ("SDF") at No. 1); *Aguirre, et al. v. Berry & Berry, Inc. et al.*, arising from damage to 58 homes (Motion for Partial Summary Judgment, Doc.15-1 ("MSJ") at p. 5; JSF at No. 6) or 172 homes (Compl. at ¶ 18.) or 107 homes (SDF at No. 2); *Arredondo, et al. v. DMP Development Corporation*[1]*, Inc., et al.*, arising from damage to 34 homes (MSJ at p. 5; JSF at No. 7) or 83 homes (Compl. at ¶ 23; SDF at No. 3); *Barrera, et. al. v. Berry & Berry Inc., et al.*, arising from damage to 57 homes (MSJ at p. 6; JSF at No. 8) or 63 homes (Compl. at ¶ 28; SDF at No. 4); and *Carranza, et al. v. DMP Development Corporation, et al.*, arising from damage to 80 homes

[1] It is undisputed that DMP, Inc. is a named insured on both NAC policies. JSF at No. 2-3.

(MSJ at p. 6; JSF at No. 9; SDF at No. 5) or 110 homes (Compl. at ¶ 33). In each of the actions, Evanston is either presently defending or has defended Berry & Berry.

Berry & Berry sought defense from NAC based on a claim that the SIR was satisfied in each suit by Berry & Berry paying $10,000.00 in each suit, triggering NAC's duty to defend. Compl. at ¶ 39. NAC refused to defend Berry & Berry until a $10,000 SIR was satisfied as to each home involved in each of underlying suits. It is undisputed that NAC has not contributed to Berry & Berry's defense in any of the aforementioned actions. Both Evanston and NAC have contributed to the settlements achieved to date in the underlying cases. MSJ at p. 1.

**III. Legal Standard**

"A party may move for summary judgment, identifying each claim or defense – or the part of each claim or defense – on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of "informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *see* Fed. R. Civ. P. 56(c)(1)(A). "Where the non-moving party bears the burden of proof at trial, the moving party need only prove that there is an absence of evidence to support the non-moving party's case." *In re Oracle Corp. Securities Litigation*, 627 F.3d 376, 387 (9th Cir. 2010) (citing *Celotex*, 477 U.S. at p. 325). If the moving party meets its initial burden, the burden shifts to the non-moving party to present evidence establishing the existence of a genuine dispute as to any material fact. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585-86 (1986). To overcome summary judgment, the opposing party must demonstrate a factual dispute that is both material, i.e., it affects the outcome of the claim under the governing law, *see Anderson*, 477 U.S. at 248; *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir.1987), and genuine, i.e., the evidence is such that a reasonable jury could return a

verdict for the nonmoving party. *See Wool v. Tandem Computers, Inc.*, 818 F.2d 1433, 1436 (9th Cir.1987). In order to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts.... Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at p. 587 (citation omitted).

A court ruling on a motion for summary judgment must construe all facts and inferences in the light most favorable to the non-moving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. *See Richards v. Nielsen Freight Lines*, 602 F.Supp. 1224, 1244–45 (E.D.Cal.1985), *aff'd*, 810 F.2d 898, 902 (9th Cir.1987).

**IV. Discussion**

A. Governing California Law

In this diversity action, California law governs the question of whether the subject policy provides coverage. *See Travelers Prop. Cas. Co. of Am. v. ConocoPhillips Co.*, 546 F.3d 1142, 1145 (9th Cir.2008).

In the insurance context, California courts "generally resolve ambiguities in favor of coverage." *AIU Ins. Co. v. Superior Court*, 51 Cal.3d 807, 822 (Cal.1990). Moreover, California courts generally interpret the coverage clauses of insurance policies broadly, to protect "the objectively reasonable expectations of the insured." *AIU*, 51 Cal.3d at 822. "Whether a contract provision is ambiguous is a question of law." *Meridian Project Systems*, 426 F.Supp.2d 1101, 1109 (E.D. 2006) (quoting *Centigram Argentina, S.A. v. Centigram Inc.*, 60 F.Supp.2d 1003, 1007 (N.D. Cal 1999).

"The California Supreme Court has established a three-step process for analyzing insurance contracts with the primary aim of giving effect to the mutual intent of the parties." *In re K F Dairies, Inc. & Affiliates*, 224 F.3d 922, 925-926 (9th Cir.2000) (citing *AIU*, 51 Cal.3d at 821–23). The Ninth Circuit summarizes California's three-step analysis as follows:

> The first step is to examine the "clear and explicit meanings" of the terms as used in their "ordinary and popular sense." In assessing the terms' meanings, we may not take individual terms out of context: Language in a contract must be construed in the context of that instrument as a whole ... and cannot be found to be ambiguous in the abstract. Thus, if the meaning a layperson would ascribe to contract language is not ambiguous, we apply that meaning.
>
> If (and only if) a term is found to be ambiguous after undertaking the first step of the analysis, the court then proceeds to the second step and resolves the ambiguity by looking to the expectations of a reasonable insured. Under California law, an insurance policy provision is ambiguous when it is capable of two or more constructions both of which are reasonable.
>
> Finally, if the ambiguity still remains, it is construed against the party who caused the ambiguity to exist. In the insurance context, this is almost always the insurer, as the California Supreme Court has held that ambiguities are generally resolved in favor of coverage, and that the courts are to generally interpret the coverage clauses of insurance policies broadly, protecting the objectively reasonable expectations of the insured.

*In re K F Dairies, Inc. & Affiliates*, 224 F.3d 922 at 925–26 (citations and internal quotation marks omitted).

B. Defendant's Argument

Defendant has moved for summary judgment based on the argument that - in the context of a self-insured retention – a "claim" as defined by its liability policies and as commonly interpreted by relevant caselaw is made on a per-home basis.

C. Plaintiff's Argument

Plaintiff relies heavily upon *Clarendon America Insurance Company v. North American Capacity Insurance Company*, 186 Cal.App.4th 556 (2010), where the California Court of Appeal determined that the term "claim" as used in an NAC policy – containing an endorsement, entitled "Defense of Claims or Suits," not found in the present case, and not containing any definition of the term "claim" as found in the present case – did not have an ordinary meaning that could only be understood to create a per-home SIR nor was it unambiguous, i.e. the insured could reasonably have believed that the SIR applied to each action, even if filed by multiple homeowners.

D. The SIR Applied on a Per-Home Basis

"It is well recognized that self-insurance retentions are the equivalent to primary liability insurance, and that policies which are subject to self-insured retentions are 'excess policies' which have no duty to indemnify until the self-insured retention is exhausted." *Pacific Employers Ins. Co. v. Domino's Pizza, Inc.*, 144 F.3d 1270, 1276-77 (9th Cir. 1998) (applying California law) (citing, *inter alia, General Star Indem. Co. v. Superior Court*, 47 Cal.App.4th 1586 (1996); *accord Forecast Homes, Inc. v. Steadfast Ins. Co*., 181 Cal.App.4th 1466, 1474 (2010).[2] It is therefore necessary to determine whether the per-claim $10,000 SIR applies per-house, as advanced by NAC, or per-action, as advanced by Evanston.

This Court first looks to "clear and explicit meaning" of the term "claim" as used in its "ordinary and popular sense." *See AIU*, 51 Cal.3d at 821–23. To that end, "[i]f contractual language is clear and explicit, it governs." *Kohlhase v. Safeco Ins. Co. of Am.*, 484 F. App'x 106, 107 (9th Cir. 2012) (quoting *Minkler v. Safeco Ins. Co. of Am.*, 49 Cal.4th 315 (2010)).

The policies define the term "claim" collectively with "claims" as follows: "Claim or Claims means a request or demand received by any insured or the Company for money or services, including the service of suit or institution of arbitration proceedings against any insured." Doc. 16 at p. 35; Doc. 16-1 at p. 41.

The court in *Devillier v. Alpine Exploration Companies, Inc.*, encountered nearly identical language, defining "claim" and "claims" collectively. *Devillier*, 946 So.2d 738, 743 (La. Ct. App. 2006). In *Devillier*, the SIR endorsement applied to "each 'claim' and each 'pollution condition.'" The SIR endorsement also used the terms "claim" and "claims" in the same breath: "In the event of a claim or claims arising which appear likely to exceed the Self–Insured Retention, no costs, other than adjusting expenses, shall be incurred by the Insured without the written consent of the Company[.]" *Devillier*, 946 So.2d at 742-744. In that context,

[2] *Pacific Employers* holds that a SIR acts as primary insurance to the policy that it applies to; the mere fact that a policy contains a SIR does not make the insurer an excess insurer for all purposes. NAC has not alleged that it is an excess insurer for all purposes such that Evanston would be precluded from seeking contribution. Such could not be the case because the NAC policies predate the Evanston policies by two years. Accordingly, Berry & Berry had to have exhausted its SIR before NAC was obliged to pay a dollar. *See Mt. McKinley Ins. Co. v. Swiss Reinsurance America Corp.*, 757 F.Supp.2d 952, 958 (N.D. Cal. 2010).

the court found that the policy treated "claim" and "claims" as indistinguishable. Such is not the case here.

Here, the SIR endorsement provides that "the retained limit for each and every claim arising from the resulting from an occurrence … shall be: $10,000.00 regardless of the number of claims from a single occurrence, suits brought or the number of claims incorporated into one such suit." Doc. 16 at p. 13; Doc. 16-1 at p. 24 (emphasis and internal quotations omitted). Adopting the approach of the Louisiana court in treating the singular and plural as interchangeable in this situation would defeat the clear purpose the SIR endorsement and result in a grammatically nonsensical reading. For example, the readings "each and every claims" or "regardless of the number of claim … incorporated into one suit," ignore NAC's purposeful differentiation between the singular and plural where that differentiation is the focus. Defining claim and claims collectively, in this context, does not render the term "claim" ambiguous.

Plaintiff argues that the inclusion of the term "suit" in the definition of the term "claim" renders the term "claim" ambiguous such that Berry & Berry could reasonably have believed that a single SIR would apply to any suit filed, even if filed by multiple homeowners. *See Clarendon,* 186 Cal.App.4th at 568-569. In *Clarendon,* the court addressed an insurance policy very similar to the policy before this Court with the exception that *this* policy defines the term "claim." The *Clarendon* court held that "the term 'claim,' both within the context of the SIR endorsement and other policy provisions, [was] distinguished from the term 'suit.'" *Clarendon*, 186 Cal.App.4th at 569. However, the *Clarendon* court pointed out that, "in the context of the SIR endorsement, the policy contemplate[d] that numerous 'claims' may comprise a 'suit[]' [and concluded that the policy] language support[ed] NAC's construction of the … 'per claim' SIR as applying to a single claim rather than a single suit." *Clarendon*, 186 Cal.App.4th at 569. The *Clarendon* court found that "claim" was used synonymously with "suit," only in the "Defense of Claims or Suits" endorsement – an endorsement absent in the present case. In fact the court noted that the "Defense of Claims or Suits" endorsement was of "particular significance in determining whether … a reasonable insured … would have understood that the … 'per claim' SIR applied to

the action as a whole … rather than to each of the … homes involved in [the action.]" *Clarendon,* 186 Cal.App.4th at 570.

Here, "claim" as defined in the policies includes "the service of suit or institution of arbitration proceedings." Doc. 16 at p. 35; Doc. 16-1 at p. 41. However, "suit" is also defined: "[s]uit means a civil proceeding in which damage because of bodily injury, property damage, personal injury or advertising injury to which this insurance applies are alleged." Doc. 16 at p. 37; Doc. 16-1 at p. 43. Although a "suit" necessarily includes at least one "request or demand received by any insured or the Company for money or services," it cannot be reasonably understood from the policy, taken as a whole, that claim and suit – separately defined terms - are used synonymously. This is especially clear in the context of the SIR endorsement which clearly distinguishes one from the other. It reads: "[t]he self-insured retention (retained limit) applies to each and every claim made against you, regardless of how many claims … are combined in a single suit." Doc. 16 at p. 13; Doc. 16-1 at p. 24.

The question remains whether the per-claim SIR in this case unambiguously applies on a per-home basis. In the context of the underlying contracts – commercial general liability insurance to insure against defects or damage to multiple single-family homes – a "request or demand … for money or services" arising as the result of "an accident, including continuous or repeated exposure to substantially the same general harm" against the insured could take many forms.[3] However, Berry & Berry could not reasonably believed that the SIR retention applied only a single time to an entire suit without regard to the number of claims it contained. As an illustration, plaintiffs in the underlying suits could have filed each claim individually rather than as a group. In such a case, Berry & Berry could not reasonably have believed that only a single SIR would apply. Further, the SIR endorsement specifically indicates that the SIR applies equally "regardless of the number of claims from a single occurrence, suits brought or the number of claims incorporated into one such suit." Such language would be of no effect if claims

[3] For instance, NAC has provided the Court with no explanation as to why a demand for repair of a defective condition of a home built by Berry & Berry would not constitute a separate claim as a claim for damages resulting from an injury caused to the same homeowner by the same defective condition. However, even if such an ambiguity exists it does not work in favor of Berry & Berry and Evanston.

that could have been brought separately were subject to only a single SIR when brought together. Although this language may be onerous, it is unambiguous. In this case, the SIR could not reasonably be interpreted to apply as Plaintiff argues. Rather, the only reasonable interpretation is that the SIR applies on a per-home basis.

Unless and until the per-home SIR is met, NAC has no duty to defend.

**V. Conclusion**

Based on the foregoing, IT IS HEREBY ORDERED that:

1. Defendant's motion for partial summary judgment is GRANTED;
2. The SIR endorsements in both NAC policies related to this case are determined to apply on a "per-home" basis.

IT IS SO ORDERED.

Dated: July 2, 2014

SENIOR DISTRICT JUDGE